**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ROBERT HIGH,

Plaintiff

v.

NDOC, et al.,

Defendants

Case No.: 2:23-cv-00847-APG-DJA

**Order Granting Defendant Huggins' Motion for Summary Judgment, Denying Plaintiff's Motion for Summary Judgment, and Granting Plaintiff's Motion to Extend Time**

[ECF Nos. 90, 92, 119]

Plaintiff Robert High sued various defendants for events that took place while he was incarcerated at High Desert State Prison (HDSP). After screening, the following claims remained:

(1) excessive force under the Eighth Amendment against defendant Alexander Huggins and

(2) deliberate indifference to medical needs under the Eighth Amendment against John Doe Medical Director and John Does Directors of Nursing I and II related to:

(a) receiving thyroid medication,

(b) seeing an ear, nose, and throat specialist, and

(c) getting treatment for the injuries he allegedly suffered from Huggins' use of force.

ECF No. 10 at 5, 7-8. Defendant Mirit Avram accepted service and filed an answer, and I subsequently granted Dr. Avram's summary judgment motion. ECF Nos. 26; 29; 85. High never successfully amended his complaint to name any other medical providers. Consequently, the only remaining claim is High's excessive force claim against Huggins.

High and Huggins each move for summary judgment, and High moves to extend time to file his reply brief. I grant the motion to extend time. I also grant Huggins' motion for summary judgment because no genuine dispute remains that High did not exhaust administrative remedies. I therefore deny High's summary judgment motion.

**I. High failed to exhaust available administrative remedies.**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party also bears the burden of persuasion at trial, to prevail "on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quotation omitted). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

High's claim is governed by the Prison Litigation Reform Act (PLRA). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate "must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). The inmate thus must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

"[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendant bears the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendant does so, the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). The defendant bears the "ultimate burden" of proving a failure to exhaust. *Id.*

Here, the applicable grievance process is set forth in Nevada Department of Corrections Administrative Regulation 740 (AR 740). AR 740.08 provides that an inmate can file an informal grievance "after failing to resolve the matter by other means, such as discussion with

staff or submitting an Offender Request Form (DOC 3012)." ECF No. 92-8 at 11. The prison has 45 days to respond to an informal grievance. *Id.* at 13. After the prison responds, the inmate has 5 days to appeal to the first level, which the prison must respond to within 45 days. *Id.* at 13-14. The inmate again has 5 days to appeal to the second level, and the prison has 60 days to respond. *Id.* at 14-15. If the inmate does not receive a response within 60 days, he must submit a form to the individual responsible for answering the grievance notifying them of the overdue response. *Id.* at 15. An overdue response at any level "is not an automatic finding for the offender," and the prison must complete a response "even if it is overdue." *Id.* at 6. But if a response is overdue, then the inmate "may proceed to the next grievance level." *Id.*

Here, the defendants have met their initial burden to show that High failed to exhaust administrative remedies before filing suit. The incident involving Huggins' alleged use of excessive force took place on December 16, 2022. ECF Nos. 90 at 3; 92-3 at 2; 92-6 at 3. High filed an informal grievance related to the incident on April 19, 2023. ECF No. 92-5 at 2. Under AR 740, the prison had until June 3 to respond. High had not received a response to his informal grievance, nor had the time run for a response, when he filed suit on May 30, 2023. ECF No. 1. Thus, this suit was prematurely filed.

However, failure to exhaust can be cured if the plaintiff amends his complaint after successfully exhausting his administrative remedies. *See Saddozai v. Davis*, 35 F.4th 705, 708-09 (9th Cir. 2022). High filed an amended complaint on July 14, 2023, and another amended complaint on February 5, 2024. ECF Nos. 3; 8. My screening order treated the February 5 complaint as the operative complaint in this matter. ECF No. 10. Consequently, if High successfully exhausted his claim by February 5, 2024, then his claim may proceed.

As of June 3, High was free to move on to a first level grievance because the prison had not timely responded to his informal grievance. Two things happened on June 8, 2023: (1) High filed a first level grievance and (2) High received the prison's rejection of his informal grievance. ECF No. 92-5 at 9-10. It is unclear from the record in what order these events occurred. High contends that the grievance coordinator responded on June 8 only after he had already filed his first level grievance, and in his first level grievance, High stated that the time for the prison to respond had run. ECF Nos. 92-5 at 11; 99 at 5. I have no evidence that High received the June 8 rejection before filing his first level grievance, and I must view the evidence in the light most favorable to High. I therefore assume that he filed his first level grievance before he received the rejection of his informal grievance.

The June 8 memo rejected High's informal grievance because he "failed to demonstrate that [he] has attempted to resolve this matter prior to submitting" his informal grievance. ECF No. 92-5 at 8. Additionally, the informal grievance was rejected for alterations to the grievance form, which includes "writing more than one line, on each line provided on the grievance form" or writing "outside of the margins." *Id.*; *see also id.* at 4, 6 (where High wrote additional lines of text below the lines on the forms). Additionally, High wrote "TBD" in the claim form for the damages amount, but the rejection memo stated that compensation for personal injury could not exceed $500. *Id.* at 5, 8. High was advised to correct the identified deficiencies and resubmit the grievance within 5 days. *Id.* High did not resubmit an informal grievance, instead standing on his first level grievance.

High's first level grievance was timely denied on July 11, 2023. *Id.* at 10, 13. The memo rejected his first level grievance for multiple reasons. *Id.* at 12. Specifically, the memo indicated that High could not proceed to the first level because his informal grievance had not been

accepted and there was still no indication that High had attempted to resolve the matter prior to filing an informal grievance. *Id.* at 12-13. It also repeated the issue about the $500 and that High had not corrected the prior identified deficiencies. *Id.* at 12. The rejection memo also stated that grievances alleging staff misconduct will be reviewed by the Warden and referred to the Office of the Inspector General if determined to be appropriate. *Id.* at 12. The memo told High to correct and resubmit his grievance within 5 days. *Id.* at 13. The memo did not address High's assertion that he was permitted to move to the first level because the time for the prison to respond to the informal grievance had run.

High then filed a second level grievance on July 11. *Id.* at 14. That grievance was denied on August 8 for the same reasons as his first level grievance. *Id.* at 15-16. However, this time, the grievance memo stated that because his grievance had been rejected numerous times already, his grievance could not be resubmitted. *Id.* at 16.

Even if High was permitted to proceed to the first level without attempting to resolve his case informally because the prison did not timely respond to his informal grievance, High received an untimely response to his informal grievance and a timely response to his first level grievance before moving to the second level. Both of those responses identified multiple defects in his informal and first level grievances.[1] And because High's second level grievance merely "reallege[d] all facts within the informal grievance as alleged herein this second level," he never corrected those defects. ECF No. 92-5 at 15. Specifically, because High did not resubmit his grievance and correct the identified deficiencies, High's grievance contained writing outside the

[1] Because the prison timely responded to his first level grievance, High cannot rely on the lack of a timely response to proceed to the second level. *See* ECF No. 92-5 at 10, 13 (High submitted his first level grievance on June 8 and the prison responded on July 11, which is less than 45 days).

margins and did not identify the dollar amount (up to a maximum of $500)[2] that he was requesting on the administrative claim form. *See id.* at 5. Per AR 740.03(1), the inmate "must state the action or remedy that will satisfy the claim in the grievance." ECF No. 92-8 at 4. If he does not do so, "the grievance will not be accepted and will be returned to the offender with an explanation as to what was missing for the grievance to be processed." *Id.*; *see also id.* at 12 ("All grievances submitted should also include the remedy sought by the offender to resolve this claim. Failure to submit a proposed remedy will be considered an improper grievance and shall not be accepted."). The defendants thus have met their initial burden to show that High did not properly exhaust available administrative remedies.

The burden thus shifts to High to show something particular in his case made the existing and generally available administrative remedies effectively unavailable to him. High relies on the fact that the prison did not timely respond to his informal grievance. ECF No. 99 at 6. He states that he thereafter "properly exhausted all available administrative remedies in accordance with AR 740." *Id.* But High does not address the identified defects with his first level grievance and there is no evidence that he corrected those defects as directed before filing his second level grievance. High was given time to resubmit his grievance to correct the identified deficiencies, but he chose not to do so. Because High did not correct the identified deficiencies, he did not "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119. High therefore has not shown that the administrative procedures were unavailable to him.

[2] *See* AR 740.05(4). ECF No. 92-8 at 9.

Accordingly, I grant summary judgment in Huggins' favor because no genuine dispute remains that High failed to exhaust his administrative remedies. And because I grant summary judgment in Huggins' favor, I deny High's summary judgment motion.

**II. Conclusion**

I THEREFORE ORDER that plaintiff Robert High's motion for summary judgment **(ECF No. 90) is DENIED**.

I FURTHER ORDER that plaintiff Robert High's motion to extend time **(ECF No. 119) is GRANTED**.

I FURTHER ORDER that defendant Alexander Huggins' motion for summary judgment **(ECF No. 92) is GRANTED**.

I FURTHER ORDER the clerk of court to enter judgment consistent with this order in favor of defendant Alexander Huggins and my prior order (ECF No. 85) in favor of Mirit Avram and against plaintiff Robert High, and to close this case.

DATED this 21st day of September, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE